EGYPTIAN POWDER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28918.   Promulgated August 30, 1929.

*John W. Fisher, Esq.*, and *John J. Lang, C. P. A.*, for the petitioner.

*E. C. Lake, Esq.*, for the respondent.

180

OPINION.

ARUNDELL: Petitioner claims that in 1920 and 1921 it was affiliated with the Equitable Powder Manufacturing Co. within the meaning of section 240 of the Revenue Acts of 1918 and 1921, because substantially all of its stock was owned by the Equitable Co. or controlled through closely affiliated interests.

The Equitable Co. owned directly 1,472 to 1,482 shares, representing percentages of from 73.6 to 74.1, which were controlled by F. W. Olin through his holding it as trustee and through his control of the Equitable Co. There can be no doubt that Olin, his sons, and other officers and directors of the two companies constituted " closely affiliated interests." Olin, Senior, owned 10 shares of the Egyptian Co.'s stock which stood in his own name and 3 shares standing in the names of his sons and another director, which gave Olin direct ownership or control of from 74.25 to 74.75 per cent of the stock of the petitioner. In addition to the stock thus directly controlled, W. H. Joesting and J. M. Olin, each of whom owned 10 shares of stock in petitioner and who were directors of petitioner and members of the executive committee and officers of petitioner, were also stockholders, directors, members of the executive committee and officers of the Equitable Co. Richard Stout, who was secretary-treasurer of both companies, was a 10-share stockholder in petitioner. Adding these stockholdings, we have percentages of from 75.75 to 76.25 of petitioner's stock which without any doubt were owned or controlled by " closely affiliated interests."

With the exception of Vehmeyer, who owned 5 per cent of petitioner's stock, and possibly Garrison, who is not described in the record and who owned 1.83 per cent, the remaining stockholders, own-

ing in the aggregate less than 25 per cent, were hand picked by F. W. Olin and were under obligation to offer their stock to him should they desire to dispose of it. The reality of Olin's control in this respect is amply demonstrated by the fact that he actually controlled the transfer of the four small blocks that changed hands in the taxable years. The 10-share lot of Louise Terbush was acquired by Olin as trustee for the Equitable; the 10 shares standing in the name of Olin's son were transferred to an officer of a company controlled by Olin in order to make him a director of petitioner; the other two blocks of stock, aggregating 83 shares, were transferred to one of Olin's sons.

When we add the stock thus controlled by Olin to that above described as owned or controlled by him, we find that over 90 per cent of petitioner's stock was owned or controlled by the small and closely affiliated group consisting of the Equitable Co., Olin and his sons, and other officers and directors of the two companies.

In addition to the stock held by the closely affiliated interests as above discussed, the business relations of the two companies are worthy of consideration. We have here, as disclosed by the evidence, what in substance is a single business enterprise, operated in the name and form of two corporations, both being dominated and controlled by one man, F. W. Olin. He defined the business and financial policies of the two corporations and directed their activities. The policies he advocated were never opposed. The two companies were not competitors but cooperators. Each one shipped powder to the other's customers. Their purchases were made jointly, the bills being paid by the Equitable which carried petitioner's share without interest when it was inconvenient for the latter to pay promptly. Their officers were in the same rooms and their office work was done by the same employees without discrimination in favor of either company. It was impossible to accurately allocate expenses. Salesmen and officers likewise worked for both companies. Experiments for both companies were made by the Equitable, which absorbed the cost of such work. The facts in this case are quite similar to those in *Gong Bell Manufacturing Co.*, 15 B. T. A. 152.

The latest pronouncement on the question of affiliation by the Circuit Court of Appeals for the Seventh Circuit, in which circuit petitioner's principal office and place of business are located, is in the case of *Great Lakes Hotel Co.* v. *Commissioner*, 30 Fed. (2d) 1. We have here a much larger percentage of stock owned or controlled by closely affiliated interests than was present in the *Great Lakes* case and to that extent we have a clearer case of affiliation. In that case the court, after stating its conclusions as to the scope of certain of the terms used in the statute, said:

Applying these conclusions to the facts in the case before us, we have no hesitancy in holding that the majority stockholders in each of the six corpora-

tions comprise a group which comes within the statutory designation of " closely affiliated interests." They were guided in their action by a common interest and their common object was attained by all corporations pursuing the same methods through the same agencies. In addition to owning more than one-half of the stock, these " closely affiliated interests " controlled other stock. For example, there was an understanding that if any minority stockholder wished to sell his stock, it should first be offered for sale to H. L. Stevens & Co., and as a matter of practice such minority stockholders offered their stock to H. L. Stevens & Co., and this company actually purchased the stock thus offered.

When we consider all the factors that have been presented, the large amount of stock owned and controlled by the closely affiliated interests, the extent of Olin's control of the two corporations, the business and financial relations of the two, it is our opinion that they must be considered affiliated within the meaning of the revenue acts and entitled to file consolidated returns. Cf. *Midland Refining Co.*, 2 B. T. A. 292; *Peavy-Byrnes Lumber Co.*, 14 B. T. A. 625.

*Judgment will be entered under Rule 50.*